# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CURTIS KOEHLER, | : | NO. 3:23-CV-00939 |
|     Plaintiff, | : | |
| | : | |
|   v. | : | |
| | : | (CAMONI, M.J.) |
| OFFICER RIDDLE, *et al.*, | : | |
|     Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

Sexual abuse in prison is a serious matter. Naturally, the Court of Appeals for the Third Circuit has recognized that sexual abuse in prison can violate the Eighth Amendment's prohibition against cruel and unusual punishments. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018). But not every sexual assault claim does. The sexual assault at issue must be objectively harmful or sufficiently serious to violate the Constitution. *Id.*

In this case, Plaintiff Curtis Koehler sued the Defendants, correctional officers at SCI-Benner, Pennsylvania, under 42 U.S.C. § 1983 for allegedly sexually assaulting him in prison. The Defendants moved for summary judgment. Doc. 27. Because, under Third Circuit precedent, the sexual assault as alleged here is not objectively harmful or sufficiently serious to violate Koehler's right to be free from "cruel and

unusual punishment" under the Eighth Amendment, the Court will grant the Defendants' motion for summary judgment.

## I.    BACKGROUND

The material facts, as provided in the statement of facts, are essentially undisputed. *See* Defs.' Statement of Material Facts (SOF), doc. 28; Pl.'s Amended Response SOF, doc. 40-1 (admitting all but one statement from the Defs.' SOF).

### A.    Factual Background

Koehler's action arises from two alleged encounters with the Defendants in February and March of 2022, during Koehler's incarceration at SCI-Benner. Docs. 28 ¶¶ 1-2; 40-1 ¶¶ 1-2.

#### 1.    *Sexual assault*

On February 11, 2022, Defendant Colburn, a correctional officer, entered Koehler's cell to deliver commissary. *See* docs. 28 ¶¶ 2, 18, 29; 40-1 ¶¶ 2, 18, 29. During that delivery, Colburn stayed in Koehler's cell for about twenty-one seconds. Docs. 28 ¶ 36; 40-1 ¶ 36.

The next day, Koehler filed a prisoner grievance, asserting that while delivering commissary Colburn entered his cell, pulled his penis out, and asked "who can suck this?" *See* docs. 28 ¶ 2; 40-1 ¶ 2. Koehler

further alleged that Colburn grabbed Koehler's hand and rubbed it across Colburn's clothed penis. Doc. 28 ¶ 5; doc. 40-1 ¶ 5. Koehler's cellmate allegedly witnessed this incident. Doc. 28 ¶ 45; doc. 40-1 ¶ 45. The prison promptly initiated an investigation under the Prison Rape Elimination Act (PREA). Docs. 28 ¶¶ 8-9; 40-1 ¶¶ 8-9. It concluded that Koehler's allegations were unfounded. Doc. 28 ¶ 43; doc. 40-1 ¶ 43.

### 2.    *Food tampering*

On March 1, 2022, Koehler filed a new grievance, asserting that Defendant Riddle, also a correctional officer, gave him and his cellmate "special" food trays and said, "I hope you both enjoy balls." Docs. 28 ¶ 51; 40-1 ¶ 51. Koehler did not eat from this tray. Docs. 28 ¶ 65; 40-1 ¶ 65. The prison investigated this grievance and concluded that it was unfounded. Doc. 28 ¶¶ 58, 61; doc. 40-1 ¶¶ 58, 61.

### B.    Procedural History

Following the Defendants' removal of Koehler's complaint from state court and the Defendants' motion to dismiss, Koehler filed the operative Amended Complaint against Colburn and Riddle.[1] *See* docs. 1,

---

[1] Koehler also sued, but later withdrew all claims against, Defendant J. A. Burd. Doc. 34 at 10.

2, 8. The Amended Complaint contains two counts: (1) Eighth Amendment Violation; and (2) Excessive Force/Assault and Battery. Doc. 8 ¶¶ 33-38.[2] In response, the Defendants filed an answer. Doc. 14.

Following discovery, the Defendants moved for summary judgment. Doc. 27. The parties have fully briefed the Defendants' motion (docs. 30, 34, 37, 40), and it is now ripe for resolution. The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, including entry of final judgment. Doc. 12.

## II.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[2] Koehler alleges four other incidents of sexual assault. *See* doc. 8 ¶¶ 14-18. But as the Defendants highlight (doc. 27 ¶ 12), it is undisputed that Koehler has not preserved any claims arising from these four incidents. *See* doc. 28 ¶ 69; doc. 40-1 ¶ 69 (admitting to Koehler's grievance history). For the instant case, Koehler has, by not reporting these incidents to staff or otherwise pursuing administrative relief, failed to exhaust. *See* doc. 28 ¶ 69 *Pew v. Jones*, No. 15-1611, 2023 WL 2692401, at *5 (M.D. Pa. Mar. 29, 2023); *Jones v. Culinary Manager II*, 30 F. Supp. 2d 491, 495 (E.D. Pa. 1998) (finding that, where a prisoner-plaintiff bringing an Eighth Amendment sexual harassment claim admitted that he did not file grievances for any of the other incidents alleged, the Court can only consider a single incident for which the plaintiff actually completed the prison grievance procedure).

a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006), citing *Anderson*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248.

The moving party bears the burden of showing that no genuine dispute exists such that summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004), citing *Anderson*, 477 U.S. at 255. Rather, "[a]ll facts and inferences

are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are "the province of the factfinder." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role, at the summary judgment stage, is "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine issue as to any material fact," however, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322).

## III.  DISCUSSION

The parties' sole factual dispute hinges on whether Colburn sexually assaulted Koehler in his cell. Viewing the evidence in light most favorable to Koehler, the Court finds that Koehler has created a genuine dispute of a material fact.

The Court, however, will nonetheless grant the Defendants' motion for summary judgment because, as a matter of law, Koehler's allegations of sexual abuse, even if taken as true, do not rise to the level of a Constitutional violation under the Eighth Amendment. Neither does

Koehler's Eighth Amendment food tampering claim. The Court addresses the factual and legal disputes in turn.

### A.    Factual Dispute

The Defendants argue that Koehler's allegations of sexual abuse are contradicted by the video evidence. Defs.' Br., doc. 30 at 13. Specifically, the Defendants contend that the video evidence shows that "the sexual assault did not occur." *Id.* at 14. The Court disagrees.

In cases where a reliable video depicts the events in question, the court must not adopt a version of the facts that is "blatantly contradicted" by the video footage. *Jacobs v. Cumberland County*, 8 F.4th 187, 192 (3d Cir. 2021), citing *Scott v. Harris*, 550 U.S. 372, 380 (2007). But, "[w]here there are multiple interpretations of video footage, the Court is bound to choose the interpretation most favorable to the non-movant." *Rivera v. Redfern*, 98 F.4th 419, 421 n.1 (3d Cir. 2024) (citation modified), citing *Rush v. City of Philadelphia*, 78 F.4th 610, 618 (3d Cir. 2023).

Here, the video evidence is far from conclusive and does not show that "the sexual assault did not occur." Doc. 30 at 14. Critically, the video fails to show any evidence as to what transpired in Koehler's cell when Colburn was inside to make his delivery. The interior of the cell is not

visible. The video shows only that Colburn entered and exited Koehler's cell. The Court cannot conclude that the sexual assault did or did not occur based on the video evidence alone. Koehler and his cellmate testified that the assault did occur, which suffices to create a dispute of material fact. Docs. 34-3, 34-4.

The Defendants, however, point to another correctional officer in the video who was present on the cell block and was "standing near the open cell door the entire time." Doc. 30 at 14. The Defendants assert that this contradicts Koehler's version of events. *Id.* Indeed, a reasonable factfinder could very well credit this evidence as disproving Koehler's allegations of sexual assault.

But at this stage, the Court must draw all reasonable inferences in Koehler's favor. *Boyle*, 139 F.3d at 393. Under this standard, a reasonable factfinder could just as well find that the other correctional officer's presence did not deter Colburn from sexually assaulting Koehler. After all, the video shows the other correctional officer peeking into the cell for a short time and then stepping away. Because the video does not "blatantly contradict" what Koehler alleges to have occurred inside his cell, the Court cannot adopt the Defendants' version of the events for the

purposes of deciding a motion for summary judgment. *Jacobs*, 8 F.4th at 192.[3]

The Court, therefore, finds that there remains a genuine dispute of material fact as to whether Colburn sexually assaulted Koehler in his cell.

### B.    Eighth Amendment Sexual Abuse

Sexual abuse is "simply not part of the penalty that criminal offenders pay for their offense against society." *Ricks*, 891 F.3d at 473 (citation omitted). Sexual assaults of inmates implicate the right of prisoners to be free from cruel and unusual punishment. *Id.* at 474.

---

[3] The Defendants also attempt to argue that the "sham-affidavit doctrine," supports summary judgment given the Plaintiff and his cellmate's conflicting deposition testimonies and their inconsistent written grievances. *See* doc. 37 at 10. The Court finds that the doctrine is inapplicable under the circumstances. The sham affidavit doctrine allows the Court to conclude that summary judgment is appropriate "if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment[.]" *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). The rationale behind the doctrine is that a deposition of a witness will usually be more reliable than his affidavit, thus a questionable affidavit submitted following a prior deposition is subject to the doctrine. *See id.* Even so, "not all contradictory affidavits are necessarily shams." *Id.* at 254, citing *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004). Here, the doctrine clearly does not apply to inconsistencies in the prisoner's earlier written grievances and the later held deposition testimonies.

To determine whether a sexual assault violates the Eighth Amendment, "the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind." *Id.* at 475. Regarding the subjective state of mind prong, the Court considers whether the defendant official had a legitimate penological purpose or if he or she acted "maliciously and sadistically for the very purpose of causing harm." *Id.*, citing *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986).

As to the objective prong, primarily at issue here, the Third Circuit has declined to craft a mechanical test. *Id.* at 478. Instead, it provides that the "scope, place, and timing of the offensive conduct will bear on its severity, as will the details of the alleged contact." *Id.* And "even if sexualized touching lacks a penological purpose, it may still fall below the threshold of constitutional cognizability based on a lack of objective seriousness." *Id.* at 476. A single incident, if sufficiently serious or severe, can run afoul of the Eighth Amendment, and the "absence of force or injury will not doom a sexual abuse claim outright." *Id.* at 477. However, not every malevolent touch by a prison guard gives rise to a federal cause of action. *Id.* at 476, citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

And mere offensive sexual comments do not suffice. *Williams v. Wetzel*, 776 F. App'x 49, 50, 53 (3d Cir. 2019) (affirming district court's grant of summary judgment because the plaintiff failed to, at minimum, allege a sexual contact between the plaintiff and the defendant correctional officer).

For instance, the Third Circuit has found an Eighth Amendment violation where a correctional officer grabbed a prisoner's genitals and caused the skin to rupture. *See Drumgo v. Kuschel*, 811 F. App'x 115, 118-19 (3d Cir. 2020). Conversely, it found no Eighth Amendment violation where a correctional officer "rubbed his erect penis against [the prisoner's] buttocks." *Ricks*, 891 F.3d at 479.

Likewise, in *Hughes v. Smith*, the Third Circuit affirmed summary judgment in favor of a correctional officer because it found that the prisoner's allegation that the correctional officer touched his testicles through his clothing did not rise to the level of cruel and unusual. 237 F. App'x 756, 759 (3d Cir. 2007); *see also Jones v. Culinary Manager II*, 30 F. Supp. 2d 491, 497 (E.D. Pa. 1998) (finding insufficient a prisoner's sexual harassment claim even though a correctional officer pinned the

prisoner against boxes and started grinding on the prisoner's buttocks with his penis and further threatened sexual assault).

Here, Koehler's allegations of sexual assault against Colburn, even if taken as true, fail to rise to the level of cruel and unusual. The most severe allegation against Colburn is that he took Koehler's hand and rubbed it across Colburn's clothed penis. *See* doc. 28 ¶¶ 2, 5; doc. 40-1 ¶¶ 2, 5. While undoubtedly offensive, this allegation falls short of the kind of sexual assault that the Third Circuit has found to be objectively serious. *See, e.g., Drumgo*, 811 F. App'x at 118-19.

The assaultive conduct Koehler alleges is even less severe than those that the Third Circuit found insufficient in *Ricks* and *Hughes*. In *Ricks*, the prisoner alleged that a correctional officer rubbed his erect penis against the prisoner's buttocks, a far more overt and invasive act. 891 F.3d at 479. And in *Hughes*, a correctional officer touched the *plaintiff's* testicles, unlike here, where Colburn is not alleged to have touched Koehler's genitals. 237 F. App'x at 759.

The Court emphasizes that Koehler's allegation of sexual assault describes what would be serious and offensive conduct if proven. But it does not, as a matter of law, rise to the level of an Eighth Amendment

violation, in light of Third Circuit precedents. The Court, therefore, will grant summary judgment as to Koehler's Eighth Amendment sexual assault claim.

### C.    Eighth Amendment Food Tampering

Koehler's Eighth Amendment food tampering claim also fails as a matter of law. To state an Eighth Amendment food tampering claim, a plaintiff must allege that he ate the tainted food and that doing so caused injury. *Rieco v. Moran*, 633 F. App'x 76, 78 (3d Cir. 2015), citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) ("prison officials may violate the Eighth Amendment by serving unsanitary, spoiled or contaminated food if the prisoner also alleges that he or she suffered a distinct and palpable injury.").

Here, even assuming that Riddle tampered with Koehler's food, Koehler admitted that he did not eat from the allegedly contaminated tray. Doc. 28 ¶ 65; doc. 40-1 ¶ 65. And he alleges no injury caused by tainted food. Because Koehler fails to meet an essential element of a food tampering claim, *Rieco* 633 F. App'x at 78, the Court will grant summary judgment. *See Ali v. Suchocki*, 254 F. App'x 143, 145 (3d Cir. 2007) (affirming summary judgment of an Eighth Amendment food tampering

claim because eating allegedly tainted pop tarts and developing a headache and nausea do not rise to a sufficiently serious deprivation); *Burgos v. Camino*, 358 F. App'x 302, 307 (3d Cir. 2009) (finding no genuine issue of material fact where the food tampering claim was based on a prisoner's claim that he saw one instance of defendant feeding an inmate food with goose feces on it); *Robinson v. Danberg*, 673 F. App'x 205, 213 (3d Cir. 2016) (emphasis added) (affirming grant of summary judgment as to an Eighth Amendment food tampering claim because the plaintiff provided "evidence in support of *only one incident* of foreign objects in his food.").

### D.   State Law Claims

Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction." *See Byrd v. Shannon*, 715 F.3d 117, 128 (3d Cir. 2013), citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that when federal claims are dismissed before trial, federal courts should not separately entertain pendent state claims). Having granted summary judgment as to Koehler's federal claims, the Court declines to exercise supplemental jurisdiction over

Koehler's state law assault and battery claims. *See Byrd*, 715 F.3d at 128 ("Because we will affirm the District Court's order granting summary judgment, . . . we will also affirm the District Court's decision to decline supplemental jurisdiction over [the plaintiff's] state law negligence claims."); *Bruton v. Paesani*, 162 F. App'x 151, 154 (3d Cir. 2006) ("Once the District Court granted summary judgment on [the plaintiff's] two federal claims, it was not required to adjudicate his claims under state law."); *Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016) (finding that a district court may *sua sponte* decline to exercise supplemental jurisdiction).

## IV.  CONCLUSION

In granting the Defendants' motion for summary judgment, the Court "does not intend to trivialize [Koehler's] allegations[.]" *Ricks*, 891 F.3d at 479. The Court's conclusion provides only that the conduct as alleged does not rise to the level that the Constitution recognizes as providing a federal cause of action. An appropriate order follows.

Date: February 26, 2026              s/ *Sean A. Camoni*
                                     Sean A. Camoni
                                     United States Magistrate Judge